IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal Action No. RDB-16-0364 |
| STEVEN HARRIS, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

In 2016, Defendant Steven Harris ("Harris") pled guilty to conspiracy to distribute and possess with intent to distribute heroin, in connection with his role in obtaining wholesale narcotics for a drug trafficking organization operating in Baltimore, Maryland. (*See* Plea Ag't 4, ECF No. 328.) Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, as set forth in his Plea Agreement, Harris was sentenced to an 87-month term of imprisonment—at the bottom of the advisory Guidelines range for this offense. (Judgment 2, ECF No. 390; Plea Ag't 4; PSR ¶ 96.) His projected release date is May 10, 2023. (Gov't Resp. Opp. 3, ECF No. 577 *SEALED*.)

Now pending are Harris's *pro se* Motion for Compassionate Release (ECF No. 532) and Motion to Appoint Counsel (ECF No. 544). Harris argues that his vulnerability to COVID-19 justifies reducing his sentence to time served with home confinement as a condition of supervised release. (Def.'s Mem. Supp. 2, ECF No. 532; Def.'s Repl. Supp. 19, ECF No. 589.) However, he has refused the Moderna COVID-19 vaccine. (Resp. Opp. 577; Repl. Supp. 8.) The Government opposes this motion. (*See* Resp. Opp., ECF No. 577.) The parties'

submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021.) For the following reasons, Harris's Motion for Compassionate Release (ECF No. 532) and Motion to Appoint Counsel (ECF No. 544) are **DENIED.**

## BACKGROUND

The underlying facts of Harris's offense are outlined in the Presentence Investigative Report ("PSR") and stipulated to in Harris's Plea Agreement. Between February and August 2016, Harris was part of a drug trafficking organization located in the Loyola Northway in Baltimore, Maryland. (Plea Ag't 4; PSR ¶ 1, 5.) He was responsible for travelling to New York to purchase wholesale quantities of heroin for the organization to package and distribute in Baltimore. (Plea Ag't 4; PSR ¶¶ 5–6.) Harris was arrested after the Drug Enforcement Agency ("DEA") was authorized to intercept communications of the organization's members and associates. (Plea Ag't 4; PSR ¶ 5.)

On September 13, 2016, Harris and his co-conspirators were charged with assorted narcotics and firearms offenses in an eleven-count Second Superseding Indictment. (ECF No. 75.) On February 28, 2018, Harris pled guilty to Count I, which charged him with conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. (Judgment 1.) Pursuant to U.S.S.G. § 2D1.1, Harris was assigned a base offense level of 27, and a criminal history category of III—the result of eighteen years in the criminal justice system and several prior convictions for narcotics and firearms possession offenses. (PSR ¶¶ 25–37, 96.) These calculations yielded an advisory Guidelines range of 87 to 108 months. (*Id.* ¶ 96.) In accordance with Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, as set

forth in Harris's Plea Agreement, this Court sentenced Harris to an 87-month term of imprisonment. (Judgment 2.) His projected release date is May 10, 2023. (Resp. Opp. 3.)

## ANALYSIS

### I.     Motion to Appoint Counsel

The United States Supreme Court has recognized that there is no general constitutional right to appointed counsel in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *United States v. Williamson*, 706 F.3d 405, 416 (4th Cir. 2013). The court has discretion to appoint counsel in proceedings under 18 U.S.C. § 3582(c) if the interests of justice so require. *See United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000); *see also United States v. Reed*, 482 F. App'x 785, 786 (4th Cir. 2012). *Cf.* 18 U.S.C. § 3006A(a)(2)(B) (providing interests of justice standard for appointment of counsel in similar post-conviction proceedings). Harris has not established that the interests of justice require the appointment of counsel in this case. Additionally, this Court finds that the presence of counsel would not affect the resolution of this motion or the issues outlined below. Accordingly, Harris's Motion to Appoint Counsel (ECF No. 544) is **DENIED.**

### II.    Motion for Compassionate Release

The First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, established significant changes to the procedures involving compassionate release from federal prison. Prior to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provided the Bureau of Prisons ("BOP") with sole discretion to file compassionate release motions with the Court. With the passage of the First Step Act, defendants are now permitted to petition federal courts directly for compassionate release whenever "extraordinary and compelling reasons" warrant a reduction in sentence. The

Act permits a defendant to seek a sentence reduction after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once these mandatory conditions are satisfied, this Court may authorize compassionate release upon a showing of "extraordinary and compelling reasons" warranting a reduction and after weighing the factors presented in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i).

The Government argues that Harris has not exhausted his administrative remedies. (Resp. Opp. 11–12.) Harris claims that he submitted an initial request on November 2020, but "no record was made of this submission and no response was received." (Repl. Supp. 5–6.) However, Harris filed a subsequent request on September 1, 2021. (*See id.* at 6; Compassionate Release/Reduction in Sent., ECF No. 589-1.) As 30 days have elapsed since this request was submitted to the warden, Harris has satisfied the statutory preconditions to filing his motion for compassionate release, and the instant motion is properly before this Court. *See* 18 U.S.C. § 3582(c)(1)(A).[1]

The United States Sentencing Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t). Of relevance here, the Commission has determined that "extraordinary and compelling reasons" exist where a defendant is "suffering from a serious physical condition . . . that substantially diminishes the ability of the defendant to provide self-

---

[1] Harris claims that the warden denied this request on November 2, 2021 but fails to provide any evidence of this denial. (Supplement to Mot. Compassionate Release ["Suppl. Mot."] 1–2, ECF No. 594.)

4

care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Similarly, a defendant who is "(i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less," faces extraordinary and compelling circumstances that may justify release. U.S.S.G. § 1B1.13 cmt. n.1(B). Finally, the Commission has authorized the Bureau of Prisons to identify other extraordinary and compelling reasons "other than, or in combination with" the reasons identified by the Commission. U.S.S.G. § 1B1.13 cmt. n.1(D).

Although potentially useful guides, neither the Sentencing Commission's Guidelines nor the Bureau of Prisons' regulations constrain this Court's analysis. *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) (holding that U.S.S.G. § 1B1.13 is not an "applicable policy statement" for compassionate release motions filed by a defendant in the wake of the First Step Act). As Judge Blake of this Court has recognized, the First Step Act embodies Congress's intent to reduce the Bureau of Prisons' authority over compassionate release petitions and authorizes the district courts to exercise their "independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Bryant*, CCB-95-0202, 2020 WL 2085471, at *2 (D. Md. Apr. 30, 2020); *accord McCoy*, 981 F.3d at 281 (holding that "the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling'"). This Court has determined that a heightened susceptibility to COVID-19 may present extraordinary and compelling reasons for a sentence reduction. See, e.g., *United States v. Hurtt*, JKB-14-0479, 2020 WL 3639987, at *1 (D. Md. July 6, 2020).

Harris claims that he suffers from medical issues that place him at risk of contracting COVID-19, particularly in light of the rampancy of the virus and its Delta variant at Fort Dix. Through his briefings, Harris alleges that he has hypertension and kidney issues,[2] increasing his vulnerability to COVID-19 and concomitant susceptibility to "long COVID" symptoms. (Repl. Supp. 6–7); *see* Ctrs. for Disease Control and Prevention, People with Certain Medical Conditions (Feb. 25, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Harris claims these risks are compounded by the conditions at Fort Dix, which has seen four COVID surges since March 2020 and "is experiencing a dire shortage of correctional officers" and protective equipment, as well as an extended quarantine that, according to Harris, has led to an increase in violent conduct and substandard living conditions. (Initial Mot. 1; Suppl. Mot. 4; Repl. Supp. 16.)

Nevertheless, while the pandemic has "created an elevated risk for [Harris] and others in BOP facilities, the rollout of three vaccines for COVID-19 . . . has lowered that risk in recent months." *United States v. Maynor*, No. RDB-17-280, 2021 WL 3269086, at *3 (D. Md. Jul. 30, 2021). The Government notes that Harris has previously been infected with COVID-19 and fully recovered, and that he was offered the Moderna vaccine on March 8, 2021 but refused to inoculate. (Resp. Opp. 12–13; *see also* BOP Medical Records 72, ECF No. 577-1.) As Judge Gallagher of this Court recently observed:

> Courts now widely recognize that a refusal to take preventative measures to protect oneself from COVID-19 undermines any assertion that the risk of viral infection constitutes an extraordinary and compelling reason justifying release. . . . Any decision to the contrary would create a perverse incentive in favor of declining the vaccine, undermining the BOP's efforts to protect its incarcerated

---

[2] As the Government notes, Harris's medical records indicate elevated blood pressure on specific occasions, but do not reflect any kidney issues. (*See, e.g.*, BOP Med. Records 25, ECF No. 577-1.)

6

population and to allow prison operations to return to some degree of normalcy in the coming months.

*United States v. Ayers*, No. SAG-04-0004, 2021 WL 235322, at *2 (D. Md. Jun. 9, 2021); *see also United States v. Morten*, 2021 WL 5084707, at *10 (D. Md. Nov. 2, 2021) (collecting cases); *accord United States v. Lohmeier,* 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021) (Tharp, J.) ("In declining vaccination (twice), Mr. Lohmeier declined the opportunity to reduce his risk exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction."); *United States v. Broadfield*, No. 20-2906, 2021 WL 3076863, at *2 (7th Cir. Jul. 21, 2021) ("The risk is self-incurred").

Harris acknowledges that he refused the vaccine but fails to provide any persuasive explanation for this decision. (Repl. Supp. 8–10.) Harris justifies his refusal by arguing that Fort Dix offered him a vaccine too early, in violation of BOP policy, and that the vaccine would not eliminate the risk posed by the Delta variant, which has accounted for as many as 70% of vaccinated inmates since August 2021. (*Id.* at 9.) This Court is unpersuaded by these contentions. Although the Delta variant of the COVID-19 virus presents additional risks to the vaccinated, the presence of this viral strain does not justify "a refusal to take preventative measures," even if those measures may be imperfect and their protection less than absolute. Consistent with Judge Gallagher's persuasive reasoning, a contrary approach would risk incentivizing vaccine hesitancy and undermining the BOP's efforts to protect the incarcerated. Accordingly, given Harris's refusal to inoculate, his vulnerability to COVID-19 cannot provide a predicate for a sentence reduction, and he has failed to demonstrate that "extraordinary and compelling" reasons warrant granting his motion.

7

Even were this Court to conclude that "extraordinary and compelling" reasons exist in this case, Harris has failed to demonstrate that the § 3553(a) sentencing factors justify reducing his sentence to time served. As with any sentencing decision, a court addressing a compassionate release motion must conduct an "individualized assessment" under § 3553(a) to determine a defendant's eligibility for a reduction. *McCoy*, 981 F.3d at 286. These factors require this Court to consider: (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a); *Bryant*, 2020 WL 2085471 at *4.

The nature and circumstances of the offense, the history of the defendant, and the imperatives of deterrence and just punishment all weigh against reducing Harris's sentence. Harris trafficked wholesale quantities of heroin for a drug organization, participating in the distribution of substances that have been "a substantial source of death in Maryland." (Resp. Opp. 14–15 (noting that the Maryland Department of Health attributed 1,000 deaths to opioid overdoses in 2018)). Although the instant offense was nonviolent, Harris has a lengthy history of recidivism, featuring thirteen prior convictions dating back to 2002, (PSR ¶¶ 23–38), and arrests for assault, firearm possession, and destruction of property, the most recent taking place in 2016, (PSR ¶¶ 41, 51–52, 65). Despite these considerations, which yielded a Guidelines range of 87 to 108 months, Harris was sentenced to exactly 87 months, at the very bottom of

8

the Guidelines range. (PSR ¶ 96; Judgment 2.) As the Government notes, Harris's history of involvement in the drug trade despite eighteen years of deterrent and rehabilitative efforts raises concerns of recidivism, and counsel against reducing Harris's sentence further.

The countervailing considerations Harris offers are insufficient to outweigh those concerns. Harris argues that he requires additional access to psychological services for anxiety and depression, which have been exacerbated by the extended quarantine at Fort Dix. (Repl. Supp. 16; Suppl. Mot. 4.) However, these diagnoses are not reflected in his medical records—although he has received treatment for addiction, as recently as July 21, 2020, Harris indicated to a BOP psychologist "that he has no history of mental health issues or treatment for such." (BOP Medical Records 52, ECF No. 577-1 *SEALED*.) Additionally, Harris notes that (1) the conditions at Fort Dix present additional hardships not originally contemplated in Harris's sentence, *cf. United States v. Hatcher*, No. 18-cr-454-10(KFP), 2021 WL 1535310 (S.D.N.Y. Apr. 19, 2021); (2) that he has "a verifiable release plan"—including access to medical care, an offer of employment, and permission to live with his sister; and (3) that concerns about recidivism "can be abated through modification of the existing conditions of supervised release" by imposing home confinement. (Repl. Supp. 12, 19.) After careful reflection, this Court finds that these considerations are insufficient to outweigh the concerns created by Harris's criminal history, and that a downward departure from the low-range Guidelines sentence imposed pursuant to Harris's Rule 11(c)(1)(C) Plea Agreement would not serve the interests of justice in this case. Accordingly, the § 3553(a) factors weigh against reducing Harris's sentence to time served.

## CONCLUSION

For the foregoing reasons, it is HEREBY ORDERED that Defendant Steven Harris's Motion for Compassionate Release (ECF No. 532) and Motion to Appoint Counsel (ECF No. 544) are **DENIED.**

Dated: April 8, 2022

_____/s/_____
Richard D. Bennett
United States District Judge